UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO.   06-10179 |
| OCA, INC., et al. | SECTION "B" |
| DEBTORS | CHAPTER 11<br>Jointly Administered |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| OCA, INC., et al.<br>    Plaintiffs | |
| VERSUS | ADV.P.NO. 06-1113 |
| BUSH, et al.<br>    Defendants | Consolidated with |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| OCA v. Brenkert | Adv.P.No. 06-1210 |
| Nazarov v. OCA | Adv.P.No. 06-1261 |
| Lamb v. OCA | Adv.P.No. 06-1262 |
| Rocke v. OCA | Adv.P.No. 06-1263 |
| Konegi v. OCA | Adv.P.No. 06-1264 |
| Carter v. OCA | Adv.P.No. 06-1265 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### REASONS FOR ORDER

This matter came on for hearing on April 11, 2007 on the motions of the orthodontists in the above captioned cases for summary judgment declaring the business service agreements ("BSAs") with the debtor, OCA, Inc., ("OCA") illegal under Colorado law and motions to suspend performance under the BSAs in the event the court finds that the BSAs are illegal. The debtor filed objections to both sets of motions. For the reasons set forth below the court finds that the BSAs of Drs. Lamb, Nazarov and Rocke are illegal under Colorado law and grants those

motions for summary judgment; the remaining three motions are denied. The court grants the motions to suspend performance under the BSAs as to Drs. Lamb, Nazarov and Rocke but denies the motions of Drs. Brenkert, Konegi and Carter.

## I. Background Facts

OCA is a company that provides services to affiliated dental practices, primarily orthodontists, through separate subsidiaries that operate in each state where there is an affiliated practice. The basic business model of OCA and its subsidiaries is that they enter into business services agreements with the affiliated practices. OCA provides the necessities for starting up and running a dental practice, including office space, equipment, trained office staff, and computer software for managing the practice. In exchange the affiliated practice generally pays a monthly service fee based on a percentage of the practice's billing or on its net profits. These BSAs are the primary operating asset of OCA and are the means through which it generates its revenue.

The orthodontists who filed the motions for summary judgment all practice in the state of Colorado and have signed BSAs with the debtor. The BSAs are all slightly different, were executed at different time, have different methods of calculating monthly service fees for OCA, are for different periods of time, and have various OCA entities as counter-parties to the agreements.[1] Thus, the court must examine each BSA separately in making its determination.

## II. Legal Analysis

### A. Standard for Summary Judgment.

Summary judgment should be granted where, "the pleadings, depositions, answers to

---

[1] The BSAs are all appended to the motions for summary judgment as exhibits.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.[3] A material fact is one that "might affect the outcome of the suit under the governing law," and an issue is genuine when, "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."[4] All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.[5] Here there are no genuine issues of material fact so the court turns directly to the issue of whether the movants are entitled to a judgment as a matter of law that the BSAs are illegal under Colorado law.

      **B.**      **Whether the BSAs are illegal under Colorado law**.

The court begins by examining the relevant Colorado statutes governing the practice of dentistry in the state of Colorado. Colorado Revised Statute § 12-35-112 states: "It is unlawful for any person to practice dentistry or dental hygiene in this state except those: (a) Who are duly licensed as dentists or dental hygienists pursuant to this article." The practice of dentistry is

---

[2] Federal Rule of Civil Procedure 56(c) made applicable herein by Federal Rule of Bankruptcy Procedure 7056.

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Willis v. Roche Biomedical Lab, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995).

[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.ed.2d 202 (1986).

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

defined in CRS § 12-35-113: "A person shall be deemed to be practicing dentistry if such person. . . (b) is a proprietor of a place where dental operation, oral surgery, or dental diagnostic or therapeutic services are performed."  Finally, a "proprietor" is defined by CSR § 12-35-103(14):

> "Proprietor" includes any person who:
> . . . .
>
> (b) Places in possession of a dentist, dental hygienist, dental assistant, or other agent such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or any other agreement for compensation for the use of such material, equipment or offices; or
>
> (c) Retains the ownership or control of dental equipment or material or a dental office and makes the same available in any manner for use by dentists, dental hygienists, dental assistants, or other agents; except that nothing in this paragraph (c) shall apply to bona fide sales of dental equipment or material secured by a chattel mortgage or retain title agreement or to the loan of articulators.

Using these definitions the court must examine the activities of OCA to determine whether under Colorado law, OCA is engaged in the illegal practice of dentistry making the BSAs between OCA and the Colorado dentists illegal.

    **1.**    **The Lamb, Nazarov and Rocke BSAs.**

        **a.**    **The Lamb BSA**

Section 3.2 of the Lamb BSA states in relevant part: "OCS will sublease the Center's offices to the ORTHODONTIST pursuant to the "Office Sublease" attached to this Agreement as Exhibit D.  OCS will lease the Center's equipment and furnishings to the ORTHODONTIST pursuant to the "Fixed Asset Lease" attached to this Agreement as Exhibit E."

        **b.**    **The Nazarov BSA**

Sections 1.3 and 1.4 of the Nazarov BSA state in relevant part:

1.3(a) OCS, or an entity retained by OCS, shall lease or otherwise arrange for the Practice's Offices, subject to the approval of the Orthodontist. . . OCS shall and hereby does sublease each Office to the Orthodontist in accordance with the terms of this Agreement. The Orthodontist shall and hereby does sublease each Office from OCS subject to terms, covenants and conditions of the Primary Lease for that Office.

1.4(a) OCS shall provide the Orthodontist with all of the furniture, fixtures, other leasehold improvements and equipment reasonably required by the Orthodontist for the operation of the Practice during the term of the Agreement. . . OCS shall hold title to and be the owner of the Furniture, Fixtures and Equipment, and shall and hereby does lease to the Orthodontist all of the Furniture, Fixtures and Equipment during the term hereof. The Orthodontist shall and hereby does lease and thereby obtain exclusive custody of and control over the Furniture, Fixtures and Equipment during the term hereof, subject to the terms of the Agreement; however, the Orthodontist agrees not to remove the Furniture, Fixtures and Equipment from the Offices.

  c.  **The Rocke BSA**

Section 1.2 of the Rocke BSA states:

In accordance with section 2.8 hereof, the parties expressly agree that all equipment, office space, facilities, and materials provided by OCS to the Orthodontic Entity hereunder shall be leased or provided to the Orthodontic Entity by OCS under a lease or other agreement or arrangement under which the Orthodontic Entity shall maintain complete care, custody, and control of the foregoing. Subject to the foregoing, OCS agrees to provide or arrange for on behalf of the Orthodontic Entity the offices, facilities, furnishings, equipment, and related services described in Exhibit 1.2 hereto.

Exhibit 1.2 states: "One office to be opened in Grand Junction, Colorado, with a minimum of 1,500 to 2,000 square feet, containing six fully equipped operatories, comparable waiting rooms and additional facilities."

  The court finds that these BSAs by their terms violate the Colorado prohibition on the practice of dentistry by unlicensed persons in that they provide for OCA to place in possession of Drs. Lamb, Nazarov and Rocke the offices and equipment necessary for the management of their dental offices through a leasing arrangement. Further, as the above provisions make clear, OCA

retains ownership of the dental equipment, which makes OCA a "proprietor" under Colorado law. Under the above cited statute, a proprietor is deemed to be practicing dentistry.

### 2.     The Brenkert and Konegi BSAs

The Brenkert and Konegi BSAs each contain a provision stating that OCA will provide facilities and equipment to the orthodontists, but they also contain the following language found in section 1.2 of those agreements: "Unless the Orthodontic Entity chooses to directly purchase furnishings, equipment and related assets in the future, OrthAlliance shall purchase such assets and lease such assets to the Orthodontic Entity under a capital leasing arrangement with such terms as mutually agreed to by the Orthodontic Entity and OrthAlliance." Because the possibility exists on the face of the BSA that these orthodontists may have purchased their own equipment, the court cannot find, as it did for Drs. Lamb, Nazarov and Rocke, that OCA is a proprietor in these two cases. No affidavits were presented to the court stating that OCA had purchased equipment to lease to the orthodontists, and the statement of uncontested facts did not state that OCA had purchased equipment to lease to the orthodontists. Therefore, in these two cases and on these grounds, the movants have not shown that there are no issues of material fact and the court denies their motions for summary judgment.

### 3.     The Carter BSA

The Carter BSA states in section 2.1:

> Manager shall provide Practice Group with the use of the "Office Facilities" (as defined below), together with all costs of repairs, maintenance, improvements (as approved by the Advisory Board), utility (telephone, electric, gas and water) expenses, normal janitorial services, refuse disposal, real or personal property lease payments and expenses, tax assessments and all other costs and expenses reasonably incurred in conducting operations in the Office Facilities during the term of this Agreement. Manager shall provide for the proper maintenance and cleanliness of the Office Facilities and the equipment furniture and furnishings (as

>approved by the Advisory Board) located in the Office Facilities. As used in this Agreement, "*Office Facilities*" means the orthodontic offices and other sites of orthodontic business operations now or hereafter utilized by Practice Group, as approved by Manager in advance of such utilization.[6]

On its face, the Carter BSA makes no mention of the purchase and re-leasing of dental equipment, and Carter has not set forth in his statement of uncontested facts any allegation that Manager, the OCA entity, has leased dental equipment to Carter. The court reads the above provision to pertain to the leasing of a dental office, and the maintenance and upkeep of that office. The above provision appears to simply be a leasing provision for real property, not the leasing of dental equipment, which is what the Colorado statute prohibits. In any event, it is not clear to the court that this provision runs afoul of the Colorado statute, and Carter's motion for summary judgment on this ground is accordingly denied.

    **C.**    **Other arguments made by movants.**

The orthodontists also attack the BSAs on other grounds including: 1) Colorado law prohibits fee sharing; 2) the BSAs constitute the illegal acquisition of a financial interest in a professional corporation; and 3) the arrangements between the debtor and the orthodontists constitutes the illegal practice of corporate dentistry under Colorado law.

First, the court agrees that fees sharing is prohibited under Colorado Revised Statute § 12-35-129(1)(v), however, the court does not read that statute as having the effect of making the BSA illegal. CRS § 12-35-129(1)(v) states in pertinent part:

>The board may deny the issuance or renewal of, suspend for a specified time period, or revoke any license provided for by this article or may reprimand, censure, or place on probation any licensed dentist or dental hygienist after notice and hearing, which may be conducted by an administrative law judge, pursuant to

---

[6] "Manager" in this section of the BSA refers to the OCA entity.

7

>the provisions of article 4 of title 24, C.R.S., or it may issue a letter of admonition without a hearing by certified mail. . . for any of the following causes:
>
>(v) Sharing any professional fees with anyone except those with whom the dentist or dental hygienist is lawfully associated in the practice of dentistry or dental hygiene; except that it shall not be considered a violation of this paragraph (v) if a licensed dentist or dental hygienist pays to an independent advertising or marketing agent compensation for advertising or marketing services rendered on the licensed dentist's or dental hygienist's behalf by such agent, including compensation that is paid for the results or performance of such services on a per-patient basis.

Although this provision clearly prohibits fee sharing, it does not state that fee sharing constitutes the unauthorized practice of dentistry in Colorado. Instead the statute provides a disciplinary mechanism that the state dental board may use to take action against any dentist found to be engaged in fee sharing.

Second, the movants cite C.R.S. § 12-35-129(1)(h) arguing that under this provision the BSAs are illegal. This argument fails for the same reason stated above for § 12-35-129(1)(v), i.e., this statute does not address the illegal practice of dentistry, but instead, simply gives the state dental board power to take action against dentists found violating its provisions.

Third, the movants cite C.R.S. § 12-35-116(1), which states in relevant part: "The conduct of the practice of dentistry or dental hygiene in a corporate capacity is prohibited." Again, however, this prohibition on the corporate practice of dentistry turns on the definition of the practice of dentistry as discussed above in section B of these reasons for order. While § 12-35-116(1) certainly applies to the Lamb, Nazarov and Rocke BSAs, the court cannot find that OCA was practicing dentistry in the case of the other orthodontists for the reasons stated above.

**D.    The motions to suspend performance.**

The orthodontists also filed motions to suspend their performance under the BSAs in the

event the motions for summary judgment were granted. The court grants the motions to suspend performance as to Drs. Lamb, Nazarov and Rocke. The remaining motions to suspend are denied.

New Orleans, Louisiana, August 6, 2007.

                                                   *J. A. Brown*
                                                   Jerry A. Brown
                                                   U.S. Bankruptcy Judge